**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| FLAMENGOS INVESTMENTS, LLC, and<br>FORT STEUBEN MALL HOLDINGS, LLC,<br><br>    Plaintiffs,<br><br>vs.<br><br>BROOKWOOD CAPITAL PARTNERS LLC<br>d/b/a BROOKWOOD CAPITAL<br>ADVISORS,<br><br>    Defendant. | CASE NO. 1:22-cv- 489<br><br><br><br>**COMPLAINT** |

NOW COME Plaintiffs Flamengos Investments, LLC, and Fort Steuben Mall Holdings,

LLC, complaining of Defendant Brookwood Capital Partners LLC d/b/a Brookwood Capital

Advisors, and allege as follows:

## PARTIES

1.  Plaintiff Flamengos Investments, LLC ("Flamengos"), is a North Carolina limited

liability company with its principal office and place of business located in Winston-Salem, North

Carolina.  Flamengos consists of two members: Carlos M. Melo and Maria C. Melo.  Both

Carlos M. Melo and Maria C. Melo are citizens and residents of Winston-Salem, North Carolina.

2.  Plaintiff Fort Steuben Mall Holdings, LLC ("FSMH"), is an Ohio limited liability

company.  Flamengos is the sole member of FSMH.

3.  Defendant Brookwood Capital Partners LLC d/b/a Brookwood Capital Advisors

("Brookwood") is a Tennessee limited liability company with its principal office and place of

business located in Nashville, Tennessee.  Upon information and belief, Brookwood has two

members—Ben Hamd ("Hamd") and Wyatt Woeltje—who are both citizens and residents of Tennessee.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## BACKGROUND

**A.      Brookwood Purchases Fort Steuben Mall**

6.      Upon information and belief, Brookwood is in the business of buying and selling shopping centers.

7.      Brookwood bought Fort Steuben Mall, which is located at 100 Mall Drive, Steubenville, Ohio (the "Property"), on or about February 22, 2022.

8.      Shortly thereafter, Brookwood decided to sell the Property by online auction.

**B.      Flamengos Buys the Mall at Auction**

9.      Flamengos had an interest in acquiring the Property.

10.      In late April 2022 and early May 2022, Brookwood made certain representations to Flamengos about the condition of the Property, leases, rents, and projections of income.  The aforementioned representations, included, without limitation, a rent roll (the "Rent Roll"), pursuant to which Brookwood represented that the Property had dozens of presently-paying tenants pursuant to leases, which provided positive cash flow and an anticipated return on investment, and that the Property generated income substantially in excess of $140,000.00 per month.

2

11. Brookwood represented that the aforementioned information provided was accurate and truthful.

12. Brookwood intended for Flamengos to rely on the aforementioned information—but knew that such information was false.

13. Brookwood was in a position to know that the aforementioned information was false but Flamengos was not.

14. Unbeknownst to Flamengos, the aforementioned information was inaccurate, inflated, and otherwise materially misleading. Specifically, Brookwood failed to disclose:

    (a)    That, in order to induce certain tenants reflected on the Rent Roll to enter into leases, Brookwood had told those tenants that the leases would never be enforced and otherwise misled prospective tenants into entering into leases;

    (b)    That many tenants had been granted extended periods of free rent of six or more months and, instead, Brookwood included such leases on the Rent Roll as part of the current cash flow of the Property;

    (c)    That many tenants listed on the Rent Roll did not have the financial wherewithal to meet their obligations under each of their respective leases; and

    (d)    That the Property did not, in fact, generate income in excess of $140,000.00 per month.

15. On information and belief, Brookwood told certain tenants that the leases would not be enforced and, accordingly, the amounts purportedly due under the leases would not be due. Brookwood's purpose in doing so was to artificially inflate the purported value of the Property and to allow Brookwood to provide Flamengos with leases that were fraudulent.

16. Brookwood took the foregoing actions, upon information and belief, in an attempt to inflate the financial numbers and what would be perceived as Flamengos' return on investment and to drive up the price that would be garnered at auction.

3

17.     While Brookwood made the aforementioned false representations with knowledge of their falsity, Flamengos was not and could not have reasonably discovered the fraudulent representations and concealments made by Brookwood.

18.     Flamengos was awarded the contract for the Property at the auction.

19.     Brookwood and Flamengos entered into a Contract for Purchase and Sale dated May 5, 2022 (the "Purchase Agreement").  A true and accurate copy of the Purchase Agreement is attached hereto as **Exhibit A**.

**C.      Flamengos Visits the Mall and Discusses Necessary Repairs with Brookwood**

20.     Flamengos visited the Property in person on May 17, 2022.  During the in-person visit, Flamengos discovered substantial and material issues with the roof on the building and the parking lot of the Property which required repair to be completed following closing (the "Property Issues").

21.     The issues with the roof included, without limitation, substantial and material leaks spread out through large portions of the roof, which, over time, had led to water damage—including damage to interior carpet and electrical panels—and high moisture levels within the interior of the Property.

22.     The issues with the parking lot included, without limitation, a number of large potholes, as well as the absence of any striping on the parking lot.  The parking lot was also in substantial need of resurfacing and paving.

23.     As the owner of the Property at the time, Brookwood knew the condition of the roof and parking lot.

24.     On May 24, 2022, Flamengos and Brookwood participated in a conference call. Among the other topics addressed during the call, the parties discussed the Property Issues.

4

During the call on May 24, 2022, Brookwood indicated that it was in the process of obtaining, reviewing, and approving a bid to get the roof repairs completed soon. Brookwood further indicated that it was scheduling the asphalt work on the parking lot.

25.     After that call, Flamengos' realtor emailed Hamd—Brookwood's Managing Director—indicating Flamengos' understanding that Brookwood would be scheduling the asphalt work on the parking lot and that Brookwood was in the process of obtaining, reviewing, and approving a bid for the roof repairs to be completed soon.

26.     On May 25, 2022, Hamd sent an email to Flamengos, which stated, in part: "I know you want to have everything lined up perfectly but in order to facilitate a fast close how about we escrow $100,000 of the closing if you close prior to June 3rd (next Friday), which will go towards additional capital improvements. ***This will be in addition to the roof repairs and the asphalt capital improvements that have already been scheduled*** (you can use those funds for operations or for repairs as they would be a credit to you)." (emphasis added).

27.     Upon information and belief, as of May 25, 2022, Brookwood had not scheduled any roof repairs or asphalt capital improvements to be made at the Property.

28.     Brookwood received a proposal from DCA Commercial Roofing dated May 25, 2022. At that time, DCA Commercial Roofing recommended replacing substantial portions of the mall's roof at a total cost in excess of $1.8 million (the "DCA Proposal"). DCA concluded that approximately 132,500 square feet of the roof were in "urgent" need of repair and that another 146,600 square foot were in "poor condition."

29.     Upon information and belief, the DCA Proposal was the only proposal Brookwood had received for roof repairs at the Property as of May 2022.

5

**D.      Brookwood Agrees to Repair the Roof and the Parking Lot to FSMH's "Satisfaction"**

30.      To induce Flamengos to close on the Property, Brookwood agreed to repair the Property Issues.

31.      Plaintiffs and Brookwood entered into the First Amendment to Contract for Purchase and Sale dated June 1, 2022 (the "Amendment").  A true and accurate copy of the Amendment is attached hereto as **Exhibit B**.  Pursuant to the Amendment, Flamengos, as the original buyer under the Purchase Agreement, assigned all of its rights, responsibilities, and obligations under the Purchase Agreement to FSMH.

32.      Pursuant to the Amendment, Brookwood agreed that it would complete repair of "the Property Issues within sixty (60) days following Closing to the satisfaction of [FSMH]."  As recognized in the recitals, the Property Issues included "potential issues or conditions with the roof on the building on and the parking lot of the Property which require repair following, and which repair is expected to be completed following Closing."

**E.      Brookwood Fails to Repair the Property Issues to FSMH's "Satisfaction" and—Instead—Refuses to Make Anything More than Minimal Repairs to the Mall**

33.      Closing occurred on June 3, 2022.

34.      Brookwood failed to complete repair of the Property Issues to FSMH's satisfaction on or before August 2, 2022, as required by the Amendment.

35.      Despite the requirement that Brookwood repair the roof to FSMH's "satisfaction," Brookwood has attempted to limit its liability for roof repairs to less than $100,000.00. Specifically, Brookwood obtained a quote from Conaway Construction dated June 14, 2022 (the "Conaway Proposal") for certain repairs to the roof at the Property.  The Conaway Proposal— which totaled $97,750.00—omits substantial portions of the work necessary to repair the roof to

6

FSMH's "satisfaction," including, by way of example, and not limitation, fixing one or more holes in the roof as well as the flat sections of the roof of the Property.

36.     Moreover, upon information and belief, Conaway Construction's contracting license has expired.

37.     Brookwood has refused to pay for any repairs to the roof at the Property beyond those reflected in the Conaway Proposal.

38.     Brookwood's failure and refusal to meet its obligations under the Agreement with respect to the roof has caused, and is continuing to cause, additional damage to the Property. In recent weeks, the Property has experienced substantial rains that have exacerbated the leaks and have led to further water and moisture intrusion at the Property. On at least one occasion, there was up to six inches of standing water in various parts of the Property.

39.     Brookwood has also failed and refused to repair the parking lot to FSMH's "satisfaction." By way of example, and not limitation, Brookwood has failed to complete the most basic repairs to the parking lot, including failing to fill all of the pot holes in the parking lot.

**F.     Brookwood Wrongfully Continues to Accept Rent Payments and Fails and Refuses to Send Rent Payments to FSMH**

40.     Pursuant to the Purchase Agreement, Brookwood assigned all leases for all or any portion of the Property, including, without limitation, the right to collect lease payments (the "Assignment of Leases").

41.     Despite the Assignment of Leases, Brookwood has continued to collect and accept rent payments from one or more tenants, including, without limitation, Walmart, Social Security Administration, and Mary Ann's Paparazzi Pieces (the "Converted Rent Payments").

7

42.     Brookwood's actions constitute a breach of the Purchase Agreement, including, without limitation, the Assignment of Leases, as well as conversion of the Converted Rent Payments.

### FIRST CLAIM FOR RELIEF
**(Fraud)**

43.     Plaintiffs incorporate the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

44.     In late April 2022 and early May 2022, Brookwood made certain false representations to Flamengos about the condition of the Property, leases, rents, and projections of income, including, without limitation, the Rent Roll.

45.     Brookwood represented that the Rent Roll and the other information provided by Brookwood to Flamengos was accurate.

46.     Through the Rent Roll, Brookwood falsely represented that the Property had dozens of presently-paying tenants pursuant to leases, which provided positive cash flow and an anticipated return on investment, and that the Property generated income substantially in excess of the amount of $140,000.00 per month.

47.     The Rent Roll was false and misleading in material respects and in at least the following ways:

(a)     The Rent Roll failed to disclose that, in order to induce certain tenants reflected on the Rent Roll to enter into leases, Brookwood had told those tenants that the leases would never be enforced and otherwise misled prospective tenants into entering into leases;

(b)     The Rent Roll failed to disclose that Brookwood had agreed to grant a number of tenants extended periods of free rent of six or more months—extending well past the closing—as an inducement to those tenants to enter into leases;

8

(c)     The Rent Roll failed to disclose that many of the tenants reflected on the Rent Roll did not have the financial wherewithal to meet their obligations under each of their respective leases;

(d)     The Rent Roll failed to disclose that the Property was not, in fact, expected to generate income in excess of $140,000.00 per month.

48.     The false and misleading information identified above caused the Rent Roll to materially overstate the current rent associated with the leases at the Property.

49.     The false information provided by Brookwood to Flamengos, including, without limitation, the Rent Roll, was reasonably calculated to deceive Flamengos and was intended to induce Flamengos to enter into the Purchase Agreement and to purchase the Property for an amount in excess of what the Property was worth.

50.     Flamengos reasonably relied on the Rent Roll and the other false information provided by Brookwood.

51.     Flamengos was in fact deceived by the Rent Roll and the other false information provided by Brookwood.

52.     The actions or omissions of Brookwood demonstrate malice or aggravated or egregious fraud.

53.     As a direct and proximate result of Brookwood's fraud, Flamengos was induced to enter into the Purchase Agreement and has suffered damages in an amount to be proven at trial.

54.     In addition to other damages, punitive damages should be awarded in connection with Brookwood's misconduct.

9

## SECOND CLAIM FOR RELIEF
### (Negligent Misrepresentation)

55.     Plaintiffs incorporate the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

56.     Brookwood had a pecuniary interest in selling the Property to Flamengos.

57.     Brookwood provided Flamengos with a copy of the Rent Roll and other information about the Property in late April and early May 2022.

58.     Brookwood represented that the information it provided to Flamengos—including, without limitation, the Rent Roll—was accurate.

59.     Brookwood intended for Flamengos to rely on the Rent Roll and the other information provided by Flamengos.

60.     The Rent Roll was false and misleading for at least the reasons alleged in Paragraphs 14–15 and 46–47 above.

61.     Brookwood provided Flamengos with false information—including, without limitation, the Rent Roll—to guide Flamengos in purchasing the Property.

62.     Brookwood failed exercise reasonable care or competence in communicating the information to Flamengos.

63.     Flamengos reasonably relied on the information provided by Brookwood, including, without limitation, the Rent Roll.

64.     As a direct and proximate result of Brookwood's negligent misrepresentation, Flamengos was induced to enter into the Purchase Agreement and has suffered damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract – Repairs)

65.     Plaintiffs incorporate the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

66.     Plaintiffs and Brookwood entered into the Amendment on or about June 1, 2022.

67.     The Amendment is valid and enforceable.

68.     In inspecting the Property, Plaintiffs discovered the Property Issues, including substantial and material issues with the roof on the building and the parking lot of the Property which required repair to be completed following the closing.

69.     The Property Issues had been known to, but intentionally concealed by, Brookwood.

70.     As part of the Amendment, and as an inducement for Plaintiffs to continue moving toward closing, Brookwood agreed to complete repair of the "Property Issues within sixty (60) days following Closing to the satisfaction" of FSMH.

71.     Closing occurred on June 3, 2022.

72.     Brookwood failed to complete repair of the Property Issues to FSMH's satisfaction on or before August 2, 2022.

73.     As of the date of this Complaint, Brookwood has failed and refused to complete repair of the Property Issues to FSMH's satisfaction and, instead, has indicated that it will only pay for minimal repairs of the roof.

74.     Brookwood's failure to repair the Property Issues to FSMH's satisfaction on or before August 2, 2022, and continuing through the date of this Complaint, is a material breach of the Amendment.

75. Brookwood's failure to repair the Property Issues to FSMH's satisfaction on or before August 2, 2022, and continuing through the date of this Complaint, has caused, and is continuing to cause, FSMH substantial damage in the form of additional injury to the Property as a result of continuing, substantial leaks in the roof.

76. As a direct and proximate result of Brookwood's breach of the Amendment, FSMH has suffered damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract – Rents)

77. Plaintiffs incorporate the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

78. Flamengos and Brookwood entered into the Purchase Agreement, pursuant to which Flamengos agreed to buy and Brookwood agreed to, among other things, sell the Property to Flamengos and to assign the leases associated with the Property to Flamengos. FSMH subsequently assumed all of Flamengos rights, responsibilities, and obligations under the Purchase Agreement.

79. The Agreement was supported by valuable consideration.

80. Plaintiffs performed their obligations under the Purchase Agreement by paying Brookwood the agreed-upon consideration.

81. Pursuant to the Purchase Agreement, Brookwood assigned all leases for all or any portion of the Property, including, without limitation, the right to collect lease payments.

82. Despite the Assignment of Leases, Brookwood has continued to collect and accept rent payments from one or more tenants, including, without limitation, Walmart, Social Security Administration, and Mary Ann's Paparazzi Pieces.

12

83.     Brookwood's actions constitute a breach of the Purchase Agreement, including, without limitation, the Assignment of Leases.

84.     As a direct and proximate result of Brookwood's breach of the Purchase Agreement, FSMH has suffered damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Conversion)

85.     Plaintiffs incorporate the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

86.     FSMH is the lawful owner of the Converted Rent Payments.

87.     The Converted Rent Payments were assigned by Brookwood to FSMH pursuant to the Assignment of Leases.

88.     As of June 3, 2022, Brookwood has no right to receive or keep the Converted Rent Payments.

89.     Brookwood has wrongfully converted the Converted Rent Payments by accepting and retaining the Converted Rent Payments and then failing and refusing to send the Converted Rent Payments to FSMH, despite knowing that Brookwood is not entitled to those funds.

90.     Brookwood intentionally undertook the wrongful acts of conversion as set forth herein.

91.     FSMH has made demands on Brookwood for the delivery of the Converted Rent Payments, but Brookwood has failed and refused to do so.

92.     By refusing to deliver the Converted Rent Payments, Brookwood has assumed and exercised the right of ownership over the Converted Rent Payments belonging to FSMH and to the exclusion of its rights.

13

93.     Upon information and belief, the Converted Rent Payments can be identified through the various bank records of Brookwood.

94.     As a direct and proximate result of Brookwood's conversion of the Converted Rent Payments, FSMH has suffered damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment)

95.     Plaintiffs incorporate the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

96.     Brookwood knowingly and voluntarily accepted the Converted Rent Payments.

97.     Brookwood received the Converted Rent Payments under circumstances that give rise to a legal or equitable obligation on the part of Brookwood to turn the Converted Rent Payments over to FSMH.

98.     Despite FSMH's demands, Brookwood has failed to turn the Converted Rent Payments over to FSMH.

99.     Brookwood has been unjustly enriched in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### (Constructive Trust)

100.    Plaintiffs incorporate the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

101.    A constructive trust may be imposed to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through circumstances that make it inequitable for him to retain the interest against the claim of the beneficiary of the constructive trust.

14

102.    Under the foregoing circumstances, it would be against equity and good conscience if Brookwood were allowed to retain any of the Converted Rent Payments.

103.    Under the foregoing circumstances, Brookwood would be unjustly enriched if it were allowed to retain any portion of the Converted Rent Payments.

104.    Because it would be inequitable for Brookwood to retain an interest in the Converted Rent Payments, a constructive trust should be imposed as to Brookwood in the amount of the Converted Rent Payments held by Brookwood, with FSMH as the beneficiary of the constructive trust.

105.    FSMH is entitled to have a constructive trust imposed for the benefit of FSMH upon Brookwood's assets, in an amount equal to any amount of the Converted Rent Payments held by Brookwood.

WHEREFORE, Plaintiffs pray for the following relief:

1.    That Plaintiffs have and recover compensatory damages from Brookwood in an amount in excess of $75,000.00, plus pre-judgment and post-judgment interest;

2.    That Plaintiffs have and recover punitive damages from Brookwood as allowed by law;

3.    That the Court establish a constructive trust as alleged herein;

4.    That Plaintiffs be awarded their costs and expenses, including attorneys' fees to the extent permitted by law;

5.    That the Court allow Plaintiffs a jury trial on all triable issues; and

6.    That the Court award Plaintiffs such additional relief as the Court deems just and proper.

15

/s/ Jeffrey P. McSherry
Jeffrey P. McSherry (0055993) *Trial Counsel*
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215
(614) 227-2300
(614) 227-2390 (facsimile)
Email: jmcsherry@bricker.com
*Co-Counsel for Plaintiffs*


Jeffrey S. Southerland (*PHV motion forthcoming*)
N.C. State Bar No. 34221
Richard W. Andrews (*PHV motion forthcoming*)
N.C. State Bar No. 44177
Tuggle Duggins P.A.
400 Bellemeade Street, Suite 800
Greensboro, NC 27401
(336) 378-1431
(336) 274-6590 (facsimile)
Email: jsoutherland@tuggleduggins.com
         randrews@tuggleduggins.com
*Of Counsel for Plaintiffs*