**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| FLAMENGOS INVESTMENTS, LLC, et al., | : | Case No. 1:22-cv-489 |
| | : | |
| | : | Judge Matthew W. McFarland |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BROOKWOOD CAPITAL PARTNERS, LLC *d/b/a* BROOKWOOD CAPITAL ADVISORS, | : | |
| | : | |
| | : | |
| Defendant. | : | |

---

### ORDER AND OPINION

---

This matter is before the Court on Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. 21), Defendant's Motion to Strike Jury Demand (Doc. 23), and Defendant's Motion for a Partial Judgment on the Pleadings (Doc. 24). Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. 21) and Defendant's Motion for a Partial Judgment on the Pleadings (Doc. 24) have been fully briefed. (*See* Docs. 25-26, 28-29.) Plaintiffs failed to timely respond to Defendant's Motion to Strike (Doc. 23). *See* S.D. Ohio Civ. R. 7.2(a)(2). Thus, these matters are ripe for the Court's review.

For the reasons below, Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. 21) is **GRANTED**, Defendant's Motion to Strike Jury Demand (Doc. 23) is **DENIED AS MOOT**, and Defendant's Motion for a Partial Judgment on the Pleadings (Doc. 24) is **DENIED AS MOOT**.

## ALLEGED FACTS AND PROCEDURAL POSTURE

Defendant Brookwood Capital Partners, LLC, doing business as Brookwood Capital Advisors, is a Tennessee business that buys and sells shopping centers. (Compl., Doc. 1, ¶¶ 3, 6.) In February 2022, Brookwood bought the Fort Steuben Mall ("Property"). (*Id*. at ¶ 7.) Soon after, Brookwood placed the Property for sale on an online auction site. (*Id*. at ¶ 8.)

Brookwood provided potential buyers with a "Rent Roll" of the Property. (Compl., Doc. 1, ¶ 10.) The Rent Roll stated that the Property had dozens of paying tenants that produced over $140,000 per month in income for the Property. (*Id*.) But, the Rent Roll was misleading. To induce tenants to lease on the Property, Brookwood told those potential-tenants that the leases would never be enforced. (*Id*. at ¶ 14.) Once those individuals became tenants of the Property, Brookwood never collected on rent. (*Id*. at ¶ 15.) Nevertheless, these leases were included on the Rent Roll as a part of the Property's cash flow. (*Id*.) In turn, the Rent Roll highly inflated the income produced by the Property. (*Id*. at ¶ 16.)

Plaintiff Flamengos Investments, LLC, an Ohio company, was one of the potential buyers of the Property. (Compl., Doc. 1, ¶¶ 2, 10.) In addition to the Rent Roll, Brookwood made other representations to Flamengos regarding the Property's condition, leases, rents, and projections of income. (*Id*.) Relying on this information, Flamengos submitted a bid at auction for the Property. (*Id*. at ¶ 18.) Flamengos' bid won and, on May 5, 2022, Flamengos and Brookwood entered into a Contract for Purchase and Sale of the Property ("Purchase Agreement") for the sum of $11,602,500. (*Id*. at ¶¶ 18-19, 50; Purchase

2

Agreement, Doc. 1-1, Pg. ID 17.)

> The Purchase Agreement was non-negotiable and, relevant here, provided that:

> [Plaintiffs] . . . fully and irrevocably release[] [Brookwood] and its employees, officers, directors, representatives . . . and agents from any and all claims that [] they may now have or hereafter acquire against [Brookwood] and its employees, officers, directors, representatives . . . and agents from any and all claims, causes of actions, whether administrative or judicial . . . of any kind whatsoever, whether known or unknown . . . arising from or relating to the Property.

and

> [Plaintiffs] acknowledge[] that [they are] not authorized to rely, [have] not relied, and will not rely, on any representations, statements, or warranty of [Brookwood], or of any agent, or representative, or broker of [Brookwood], not expressly set forth [in the Purchase Agreement].

(Purchase Agreement, Doc. 1-1, Pg. ID 29, 31.)

On May 17, 2022, Flamengos inspected the Property. (Compl., Doc. 1, ¶ 20.) During the visit, Flamengos discovered substantial problems with the Property's roof and parking lot. (*Id.*) Brookwood assured Flamengos that it was repairing those property issues. (*Id.* at ¶ 24.) Brookwood's Managing Director emailed Flamengos, stating: "in order to facilitate a fast close[,] how about we escrow $100,000 of the closing . . . , which will go towards additional capital improvements. This will be in addition to the roof repairs and the asphalt capital improvements that have already been scheduled." (*Id.* at ¶ 26.) As it turns out, however, Brookwood had not scheduled any repairs for the property issues. (*Id.* at ¶ 27.)

Flamengos and Brookwood agreed that repairs on the property issues would be a condition of closing. (Compl., Doc. 1, ¶ 30.) The parties reduced this agreement in writing

as an amendment to the Purchase Agreement. (*Id.* at ¶¶ 30-31.) Under this amendment, Flamengo assigned all of its rights, responsibilities, and obligations under the Purchase Agreement to Plaintiff Fort Steuben Mall Holdings, LLC ("FSMH"), of which Flamengos is the sole member. (*Id.* at ¶¶ 2, 31.) The amendment then required Brookwood to complete repairs on "the Property Issues within sixty (60) days following Closing to the satisfaction of [FSMH]." (*Id.* at ¶ 32.)

On June 3, 2022, the parties closed on the Property. (Compl., Doc. 1, ¶ 33.) Brookwood failed to complete repairs on the property issues within 60 days of closing. (*Id.* at ¶ 34.) Now, Brookwood is refusing to pay beyond $100,000 for the Property's roof repairs, citing to a contractor quote that found that repairs would cost only $97,750. (*Id.* at ¶¶ 35, 37.) Though, previously, Brookwood had received another quote stating that the roof would require over $1.8 million to properly repair. (*Id.* at ¶ 28.) Brookwood's failure to repair the property issues has created additional damages to the Property. (*Id.* at ¶ 38.)

Plaintiffs now bring claims of fraud, negligent misrepresentation, breach of contract, conversion, unjust enrichment, and constructive fraud against Brookwood. (Compl., Doc. 1, ¶¶ 43-105.) On June 29, 2023, Plaintiffs moved for leave to amend their Complaint to allege new facts and add new defendants and claims. (Motion to Amend, Doc. 21.) On June 30, 2023, Brookwood moved to strike a portion of Plaintiffs' Complaint (Motion to Strike, Doc. 23) and for partial judgment on the pleadings (Motion for Judgment, Doc. 24).

**LAW & ANALYSIS**

I.  **Plaintiffs' Motion to Amend**

Under Federal Rule of Civil Procedure 15(a)(2), if a party cannot amend its pleading as a matter of course under subsection (1), then "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Courts are authorized to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts consider several factors in deciding whether to allow a party to amend a pleading, such as "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001) (quotations omitted). Rule 15 is interpreted liberally and in favor of allowing parties to amend their pleadings. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiffs move to amend their Complaint to include new allegations, defendants, and claims. (*See* Proposed Am. Compl., Doc. 21-1.) The Proposed Amended Complaint adds Ben Hamd, Wyatt Woeltje, and Lydia Chernitsky-Hamd as defendants to this action ("Proposed Defendants"). (*Id.* at ¶¶ 4-6.) The Proposed Amended Complaint also brings new claims of fraud and negligent misrepresentation against Hamd and Woeltje, as well as various RICO claims. (*Id.* at ¶¶ 47-71, 84-106.) Specifically, Plaintiffs bring a direct RICO claim against Hamd for violating 18 U.S.C. § 1962(c) and a RICO conspiracy claim against Hamd, Woeltje, and Chernitsky-Hamd for violating 18 U.S.C. § 1962(d). (*Id.* at ¶¶ 84-106.)

The Proposed Amended Complaint also brings a swath of new allegations. Relevant here:

**Purchase Price.** The Proposed Amended Complaint alleges that Brookwood bought the Property for about four million dollars. (Proposed Am. Compl., Doc. 21-1, ¶ 11.)

**Proposed Defendants.** The Proposed Amended Complaint identifies Hamd as the founder, owner, and Managing Director of Brookwood. (Proposed Am. Compl., Doc. 21-1, ¶ 4.) Hamd resides in either Florida or Tennessee. (*Id.*) Woeltje is also an owner of Brookwood and lives in Tennessee. (*Id.* at ¶ 5.) Chernitsky-Hamd is the Director of Leasing for Brookwood and resides in Maryland. (*Id.* at ¶ 6.)

**Rent Roll.** The Proposed Amended Complaint specifies that Woeltje prepared the Rent Roll. (Proposed Am. Compl., Doc. 21-1, ¶ 20.)

**Property Condition Assessment.** The Proposed Amended Complaint also alleges that Brookwood provided potential buyers with a "Property Condition Assessment." (Proposed Am. Compl., Doc. 21-1, ¶ 14.) The Property Condition Assessment misrepresented the conditions of the Property. (*Id.*) For example, prior to being provided to potential buyers, the Property Condition Assessment included "roof replacement" as a deficiency of the Property. (*Id.* at ¶ 18.) But, Hamd directed that this deficiency be removed from the list and instead, the Property Condition Assessment solely identified that a "worst case scenario" allowance of $42,000 was necessary to repair the Property. (*Id.* at ¶ 18.)

**Drop Box.** The Proposed Amended Complaint alleges that both Hamd and Woeltje

were responsible for collecting and preparing the Property documents—including the Rent Roll and Property Condition Assessment—to be provided to potential buyers. (Proposed Am. Compl., Doc. 21-1, ¶ 16.) These documents were uploaded to Dropbox — a virtual data room for the auction site. (*Id.* at ¶ 14.) Hamd and Woeltje uploaded these misleading documents to inflate the price of the Property at auction. (*Id.* at ¶ 22.)

*Tenant Scheme.* The Proposed Amended Complaint alleges that Chernistsky-Hamd induced tenants to lease on the Property under the promise to never enforce the lease. (Proposed Am. Compl., Doc. 21-1, ¶ 14.) Hamd and Woeltje directed Chernitsky-Hamd to do so. (*Id.* at ¶ 21.)

*Property Issues.* The Proposed Amended Complaint alleges that Hamd was the individual who corresponded with Plaintiffs, through phone call and email, stating that Brookwood was repairing the property issues before closing. (Proposed Am. Compl., Doc. 20-1, ¶¶ 30, 32.)

*Prior Lawsuits.* Further, the Proposed Amended Complaint alleges that Brookwood, Hamd, and Woeltje have engaged in similar misconduct in Tennessee and North Carolina. (Proposed Am. Compl., Doc. 21-1, ¶ 89.) Lawsuits were filed against Brookwood, Hamd, and Woeltje in Tennessee and North Carolina for the sale of commercial properties. (*Id.*) In both suits, Brookwood, Hamd, and Woeltje allegedly created sham leases to misrepresent the income and occupancy of commercial properties to induce buyers to purchase at increased prices. (*Id.*)

*Subsequent Property Purchases.* And finally, the Proposed Amended Complaint alleges that Brookwood and Proposed Defendants used the proceeds from the Property

sale to buy more commercial properties. (Proposed Am. Compl., Doc. 21-1, ¶ 93.) For example, Brookwood and Proposed Defendants bought the Maplewood Mall in St. Paul, Minnesota. (*Id.*) Plaintiffs allege that Brookwood and Proposed Defendants intend to fraudulently inflate the prices of those commercial properties in like manner as the Property. (*Id.* at ¶ 94.)

Brookwood argues that these amendments are futile because the fraud and RICO claims in Plaintiffs' Proposed Amended Complaint could not withstand a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6). (*See* Brookwood Response in Opp., Doc. 25.) "A motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (quotations omitted). When reviewing a pleading under Rule 12(b)(6), courts accept all allegations of material fact as true and construe such allegations in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). Courts are not bound to do the same for a complaint's legal conclusions. *Id.* at 555. A claim for relief must be "plausible on its face" and a complaint that lacks such plausibility warrants dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court will consider each claim to determine the proposed pleading's futility.

### a. Fraud Claim Against Brookwood, Hamd, and Woeltje

Brookwood first argues that Plaintiffs' proposed amendments are futile because the fraud claim against Brookwood, Hamd, and Woeltje in Plaintiffs' Proposed Amended Complaint would fail under Rule 12(b)(6). (Brookwood's Response in Opp., Doc. 25, Pg.

8

ID 261-69.) Brookwood argues that Plaintiffs' fraud claim is not pled with particularity. (*Id.* at Pg. ID 261-64.) Alternatively, Brookwood argues that Plaintiffs' fraud claim is prohibited under the Purchase Agreement. (*Id.* at Pg. ID 264-69.)

### i. Particularity

Brookwood first argues that Plaintiffs' fraud claim in their Proposed Amended Complaint is not pled with particularity. (Brookwood's Response in Opp., Doc. 25, Pg. ID 261-64.)

Before considering the substance of this argument, the Court must first note that Plaintiffs' fraud claim is, at least in part, one for fraudulent inducement. Under the "Fraud" heading, Plaintiffs allege that Brookwood, Hamd, and Woeltje made misrepresentations about the Property. (Proposed Am. Compl., Doc. 21-1, ¶ 48.) Relying on this information, Plaintiffs were induced to enter into the Purchase Agreement and later close on the Property. (*Id.* at ¶ 59.) In substance, then, Plaintiffs' fraud claim is, in part, one for fraudulent inducement. *See Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (Courts should "not rely solely on labels in a complaint, but [] probe deeper and examine the substance of the complaint.").

Under Federal Rule of Civil Procedure 9(b), a party "alleging fraud" must "state with particularity the circumstances constituting fraud." At a broad level, "Rule 9(b) requires the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quotations omitted). The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made,

and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). Further, the plaintiff must describe "the fraudulent scheme" and "the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2001). "Rule 9(b)'s ultimate purpose is to place the defendant on sufficient notice of the misrepresentation so that it may adequately reply to the plaintiff's allegations." *King v. Hertz Corp.*, No. 1:09-cv-2674, 2011 U.S. Dist. LEXIS 35610, at *15 (N.D. Ohio Mar. 31, 2011) (quotations omitted).

> The elements of fraud and fraudulent inducement under Ohio law are:
>
> (1) a representation or, when there is a duty to disclose, a concealment of fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance.

*Cantlin v. Smythe Cramer Co.*, 114 N.E. 3d 1260, 1270-71 (Ohio Ct. App. 2018) (citation omitted).

Plaintiffs allege that Brookwood, through Hamd and Woeltje, made misrepresentations to Plaintiffs about the Property to induce them to buy the Property. (Proposed Am. Compl., Doc. 21-1, ¶¶ 14, 48, 59.) Prior to the sale, Brookwood, through Hamd and Woeltje, created and provided Plaintiffs with a Rent Roll and Property Condition Assessment—both of which contained false information. (*Id.* at ¶¶ 14-15, 19, 29, 33.) Brookwood, through Hamd and Woeltje, knew that the information in the Rent Roll was false because they were involved in the scheme to lease the Property to non-paying tenants to inflate the income produced by the Property. (*Id.* at ¶¶ 20-21.) And,

10

Hamd knew that the Property Condition Assessment was misleading because he specifically requested that "roof replacement" be removed as a deficiency. (*Id.* at ¶ 18.) Nevertheless, Brookwood, through Hamd and Woeltje, provided this information to Plaintiffs, representing it as truthful and accurate. (*Id.* at ¶ 17.) Plaintiffs relied on this information when entering into the Purchase Agreement. (*Id.* at ¶ 59.)

The misrepresentations continued on. Plaintiffs quickly discovered property issues during inspection. (Proposed Am. Compl., Doc. 21-1, ¶¶ 26-28.) During a call with Plaintiffs, Hamd stated that Brookwood would repair those issues. (*Id.* at ¶¶ 30-32.) In a subsequent email, Hamd specifically stated that "roof repairs and [] asphalt capital improvements [on the Property] have already been scheduled." (*Id.* at ¶ 32.) Of course, Brookwood had not scheduled the repairs and had no intention to do so. (*Id.* at ¶¶ 33, 42.) Relying on these statements, as well as a condition of completion in the Purchase Agreement, Plaintiffs closed on the Property. (*Id.* at ¶¶ 40, 59.) Brookwood has yet to repair the property issues. (*Id.* at ¶ 44.) As a result of their reliance on these misrepresentations, Plaintiffs overpaid on a commercial property that requires serious repairs. (*Id.* at ¶¶ 21, 45-46.)

Based on these allegations, Plaintiffs have met the heightened standard of Rule 9(b) for pleading a fraud claim. Plaintiffs provide specific statements by Brookwood, through Hamd and Woeltje, that induced Plaintiffs to enter into the Purchase Agreement and close on the Property. Plaintiffs identified when these statements were made. Plaintiffs explained how these statements were fraudulent. And, Plaintiffs described how Brookwood, Hamd, and Woeltje knew they were false. These allegations are pled with

11

particularity, such that Brookwood, Hamd, and Woeltje are on notice of the claim and can respond accordingly.

As Plaintiffs' fraud claim has been pled with particularity, Brookwood's first futility argument is not well taken.

### ii. Purchase Agreement Waiver Provisions

Next, Brookwood argues that Plaintiffs' fraud claim fails because the claim is barred under the Purchase Agreement. (Brookwood Response in Opp., Doc. 25, Pg. ID 264-69.) Brookwood cites two provisions in the Purchase Agreement that allegedly bar Plaintiffs' fraud claim: (1) a release of claims provision and (2) a disclaimer of assurances provision. (*Id.* at Pg. ID 264-69.) The Court will consider each provision in turn.

### 1. Release of Claims Provision

Brookwood argues that Plaintiffs' fraud claim warrants dismissal based on a release of claims provision in the Purchase Agreement, which states that:

> [Plaintiffs] . . . fully and irrevocably release[] [Brookwood] and its employees, officers, directors, representatives . . . and agents from any and all claims that [] they may now have or hereafter acquire against [Brookwood] and its employees, officers, directors, representatives . . . and agents from any and all claims, causes of actions, whether administrative or judicial . . . of any kind whatsoever, whether known or unknown . . . arising from or relating to the Property.

(Brookwood Response in Opp., Doc. 25, Pg. ID 264-68; Purchase Agreement, Doc. 1-1, Pg. ID 29.) But, this provision is likely unenforceable against Plaintiffs.

First, if Plaintiffs' fraudulent inducement claim is successful, the terms of the Purchase Agreement may be voidable by Plaintiffs. Under Ohio law, a party who has been fraudulently induced to enter into a contract may elect among two possible

remedies: the party may either rescind the contract or retain what he has obtained under the contract and bring an action to recover damages for his injuries. *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.*, 758 N.E.2d 1173, 1179 (Ohio Ct. App. 2001). "A contract which is rescinded is ineffective *ab initio* and no rights may be predicated upon that contract." *May v. State Farm Ins. Co.*, No. 90AP-1407, 1991 Ohio App. LEXIS 2327, at *2 (Ohio Ct. App. May 14, 1991) (citing *Schuster Elec. Co. v. Hamilton Cnty. Stores, Inc.*, 22 N.E.2d 582 (Ohio Ct. App. Mar. 20, 1939)). Plaintiffs do not identify the specific remedy that they seek for their fraud claim. (*See* Proposed Am. Compl., Doc. 21-1.) But, if Plaintiffs' fraud claim is successful, they may choose to rescind the Purchase Agreement as their remedy. This remedy would void the Purchase Agreement and the release of claim provision within would be unenforceable against Plaintiffs.

But even if the Purchase Agreement remains valid, the release of claims provision may still be unenforceable against Plaintiffs. Although release of claim provisions can be valid and enforceable, "Ohio law finds that such a clause is ineffective where the party seeking protection failed to exercise any care whatsoever, where there was willful or wanton misconduct, or where the clause is against important public policy concerns, unconscionable, or vague and ambiguous." *Ohio Cas. Ins. Co. v. D & J Distrib. & Mfg. Inc.*, No. L-08-1104, 2009 Ohio App. LEXIS 3239, at *23 (Ohio Ct. App. July 31, 2009). Here, the release of claims provision "may be overbroad since it appears to waive 'any claim' against [Brookwood and Proposed Defendants], including those for [] reckless, willful, or wanton misconduct." *Tucker v. Santa Barbara Tax Prods. Grp., LLC*, No. 3:22-cv-01095, 2023 U.S. Dist. LEXIS 61353, at * 19 n.8 (N.D. Ohio Apr. 5, 2023). Whether this provision

13

is overbroad is better suited for determination at summary judgment, where the parties will have had an opportunity to develop a factual record on the "particular circumstances of the transaction." *Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161, 1166 (Ohio Ct. App. 2004).

Thus, the release of claims provision in the Purchase Agreement may not be enforceable against Plaintiffs. In turn, this argument fails to show that Plaintiffs' fraud claim in its Proposed Amended Complaint fails under Rule 12(b)(6).

## 2. Disclaimer of Assurances Provision

Next, Brookwood argues that Plaintiffs' fraud claim fails based on a disclaimer of assurances provision in the Purchase Agreement, which states that:

> [Plaintiffs] acknowledge[] that [they are] not authorized to rely, [have] not relied, and will not rely, on any representations, statements, or warranty of [Brookwood], or of any agent, or representative, or broker of [Brookwood], not expressly set forth [in the Purchase Agreement].

(Brookwood Response in Opp., Doc. 25, Pg. ID 268-69; Purchase Agreement, Doc. 1-1, Pg. ID 31.)

As discussed above, this provision may be unenforceable against Plaintiffs generally because the Purchase Agreement may be voidable by Plaintiffs. *See Jeffrey Mining*, 758 N.E.2d at 1179. But, even if the Purchase Agreement is valid, the disclaimer of assurances provision is not.

"[T]he presence of a disclaimer [of assurances] does not necessarily shield a defendant from liability or mean that a plaintiff will not be able to demonstrate justifiable reliance." *Northpoint Props. v. Charter One Bank*, No. 94020, 2011 Ohio App. LEXIS 2206, at

14

*35 (Ohio Ct. App. May 26, 2011). "[G]eneral disclaimers of accuracy do not shield sellers who knowingly make false statements." *In re Natl. Century Fin. Ent., Inc., Invest. Litig.*, 541 F. Supp. 2d 986, 1005 (S.D. Ohio 2007); *see also Navistar, Inc. v. Dutchmaid Logistics, Inc.*, 171 N.E. 3d 851, 864 (Ohio Ct. App. 2021) ("[A] party cannot escape liability for his own deliberate misrepresentations and/or omissions by inserting boilerplate disclaimers into a limited warranty."). Only when a disclaimer addresses specific subject matter can it be "dispositive of a lack of justifiable reliance." *Stratesphere LLC v. Kognetics Inc.*, No. 2:20-cv-2972, 2023 U.S. Dist. LEXIS 99630, at *20 (S.D. Ohio Feb. 23, 2023) (collecting cases).

The disclaimer of assurances provision in the Purchase Agreement is too broad to protect Brookwood from a claim of justifiable reliance by Plaintiffs. The disclaimer does not address any specific type of representation made by Brookwood to Plaintiffs. Instead, the disclaimer contains general, boilerplate language that disclaims "any representation, statement, or warranty" by Brookwood or Proposed Defendants. (Purchase Agreement, Doc. 1-1, Pg. ID 31.) Consequentially, the disclaimer in the Purchase Agreement failed to give Plaintiffs a "fair warning" that they were disclaiming reliance on representations by Brookwood. *Navistar, Inc.*, 171 N.E. 3d at 864. In turn, the disclaimer of assurances provision is not enforceable and cannot preclude Plaintiffs' fraud claim.

The cases that Brookwood cites in opposition to this conclusion are distinguishable. First, most of the cases cited by Brookwood to argue the enforceability of these type of disclaimer provisions deal with specific disclaimers. (*See* Brookwood Response in Opp., Doc. 25, Pg. ID 267-69.) For example, in *Axios, Inc. v. Thinkware, Inc.*, the contract specifically disclaimed representations about whether a software would

15

meet the plaintiff's needs. No. 1:15-cv-379, 2015 U.S. Dist. LEXIS 113167, at *6-7 (S.D. Ohio

Aug. 26, 2015). *Axois*'s specific disclaimer is unlike the extremely general language in the

Purchase Agreement's disclaimer. Brookwood also cites to *Goodyear Tire & Rubber Co. v.*

*Chiles Power Supply*, 7 F. Supp. 2d 954 (N.D. Ohio 1998), to argue that a general disclaimer

can be enforceable. (Brookwood Response in Opp., Doc. 25, Pg. ID 267-68.) But, *Goodyear*

is limited to instances when the contracting parties could negotiate the terms of the

warranty. *See Navistar*, 171 N.E.3d at 864. This case does not deal with a negotiated

disclaimer, as the Purchase Agreement was drafted exclusively by Brookwood and was

non-negotiable. (*See* Purchase Agreement, Doc. 1-1.) This "imbalance of bargaining

power" only reinforces this Court's decision that the disclaimer is improper. *See Navistar,*

*Inc.*, 171 N.E. 3d at 864. Thus, the disclaimer of assurances provision in the Purchase

Agreement is not enforceable against Plaintiffs and cannot bar their fraud claim.

Accordingly, Brookwood has not shown that Plaintiffs' fraud claim in their

Proposed Amended Complaint would fail under Rule 12(b)(6).

### b. 18 U.S.C. § 1962(c) Direct RICO Claim Against Hamd

Next, the Court looks to Plaintiffs' 18 U.S.C. § 1962(c) claim against Hamd in

Plaintiffs' Proposed Amended Complaint. (Proposed Am. Compl., Doc. 21-1, ¶¶ 84-98.)

Brookwood argues that the § 1962(c) claim fails under Rule 12(b)(6) because Plaintiffs

failed to allege (1) the elements with particularity and (2) damages. (Brookwood

Response in Opp., Doc. 25, Pg. ID 270-75.) The Court will consider each argument in turn.

### i. Elements

A violation of § 1962(c) requires (1) conduct (2) of an enterprise (3) through a

pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Brookwood alleges that Plaintiffs fail to plead the second, third, and fourth elements. (Brookwood Response in Opp., Doc. 25, Pg. ID 272-73.) The Court will consider these elements in reverse order, starting with the fourth element.

### 1. Racketeering Activity

Brookwood argues that Plaintiffs fail to meet the fourth element of a § 1962(c) claim, as Plaintiffs do not allege any "racketeering activity" by Hamd. (Brookwood Response in Opp., Doc. 25, Pg. ID 272-73.) Section 1961(1) sets forth an extensive list of predicate offenses, all of which constitute "racketeering activity." 18 U.S.C. § 1961(1). Plaintiffs allege that Hamd engaged in predicate acts of wire fraud, in violation of 18 U.S.C. § 1343, and "monetary transactions in property derived from specified unlawful activity," in violation of 18 U.S.C. § 1957. (Proposed Am. Complaint, Doc. 21-1, ¶ 93.) The Court will first consider Plaintiffs' wire fraud allegations.

### a. Wire Fraud

"Wire fraud is the use of interstate or foreign communications for the purpose of executing a scheme to defraud others of property." *United States v. Palma*, 58 F.4th 246, 259 (6th Cir. 2023) (citing 18 U.S.C. § 1343). Wire fraud consists of three elements: "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Rathburn*, 771 F. App'x 614, 620 (6th Cir. 2019) (citations omitted). As this predicate act is a fraud-based offense, the "racketeering activity" must be pled with sufficient particularity to meet the heightened standard of Rule 9(b). *Brown v. Cassens Transp. Co.*,

17

546 F.3d 347, 365 n.4 (6th Cir. 2008). "Rule 9(b) requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 406 (6th Cir. 2012).

Looking to the first element of wire fraud, "a scheme to defraud requires sufficient evidence of several misrepresentations, and includes any plan or course of action by which someone intends to . . . deprive another by deception of money or property by means of false or fraudulent pretenses, representations, or promises. *Rathburn*, 771 F. App'x at 621 (citations omitted). "A scheme to defraud is not measured by a technical standard, but rather is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *Id.*

Plaintiffs have sufficiently pled a scheme to defraud by Hamd. Plaintiffs allege that Hamd made material misrepresentations to Plaintiffs and other potential buyers about the Property's income and condition. (Proposed Am. Compl., Doc. 21-1, ¶¶ 14-25.) Hamd engaged in this scheme by providing the Rent Roll and Property Condition Assessment to potential buyers and Plaintiffs. (*Id.* at ¶ 16.) Hamd knew that the Rent Roll was misleading, as he directed the plan to get non-paying tenants to lease on the Property. (*Id.* at ¶ 21.) Hamd also knew that the Property Condition Assessment was misleading, as he had "roof repairs" removed as a deficiency and replaced with a low-dollar, "worst case scenario" number. (*Id.* at ¶18.) These misrepresentations were used to fraudulently inflate the value of the Property at auction. (*Id.* at ¶ 22.) Hamd also led Plaintiffs to close on the Property by assuring Plaintiffs that the property issues were being resolved—when in fact, they were not. (*Id.* at ¶¶ 30-40.) Plaintiffs, therefore,

18

particularity pled the misrepresentations that constitute Hamd's scheme to defraud.

Looking to the second element of wire fraud, Plaintiffs sufficiently allege that "interstate wire communications" were used in furtherance of Hamd's scheme. Plaintiffs allege that Hamd and Woeltje uploaded the Rent Roll and Property Condition Assessment to the auction site's Dropbox, which functioned as the "virtual data room for the auction of the Property." (Proposed Am. Compl., Doc. 21-1, ¶ 14.) Plaintiffs also allege that Hamd communicated about the Property's repairs through email and telephone correspondence with participants located in different states. (*Id.* at ¶¶ 30-34.) These acts constitute interstate wire communications. *See Hino Motors Mfg. U.S.A., Inc. v. Hetman*, No. 20-cv-10031, 2022 U.S. Dist. LEXIS 190571, at *11 (E.D. Mich. Aug. 4, 2022).

Finally, Plaintiffs sufficiently pled the third element of wire fraud, that Hamd intended to deprive a victim of money or property. "The third element of wire fraud requires that the misrepresentation or omission must have the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *Rathburn*, 771 F. App'x at 621-22 (citations omitted). As discussed above, Hamd knew that the information he was providing to Plaintiffs and other potential buyers was false. (Proposed Am. Compl., Doc. 21-1, ¶¶ 14-18, 30-40.) Hamd used the Rent Roll and Property Condition Assessment to inflate the value of the Property and induce potential buyers, such as Plaintiffs, to bid on the Property at higher prices. (*Id.* at ¶¶ 18, 22.) Plaintiffs' bid won, and Hamd later persuaded Plaintiffs to close on the Property through knowingly false statements about repairs to the property issues. (*Id.* at ¶ 36.) These allegations sufficiently demonstrate that

Hamd intended to deprive Plaintiffs of money or property when engaging in his scheme.

Plaintiffs have pled the elements of wire fraud with particularity in their Proposed Amended Complaint. In turn, Plaintiffs have shown at least one instance of racketeering activity by Hamd.

### b. Monetary Transactions

Plaintiffs also allege that Hamd participated in racketeering activity by engaging in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1957. (Proposed Am. Compl., Doc. 21-1, ¶ 93.)

Section 1957(a) describes such conduct:

> Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

"'Monetary transaction' means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution." 18 U.S.C. § 1957(f)(1). "'[C]riminally derived property' means any property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. § 1957(f)(2). "Specified unlawful activity" is defined as any criminal offense listed under § 1956, which includes wire fraud. *See United States v. Coffman*, 612 F. App'x 278, 282 (6th Cir. 2015); *see also* 18 U.S.C. §§ 1957(f)(3), 1956(c)(7), 1961(1).

Plaintiffs sufficiently pled that Hamd is attempting to engage in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1957.

As detailed above, Plaintiffs pled that Hamd engaged in wire fraud when selling the Property. From that transaction, Hamd used the proceeds to buy more commercial properties, including the Maplewood Mall. (Proposed Am. Compl., Doc. 21-1, ¶ 93.) Those commercial properties, then, may constitute "criminally derived property." Plaintiffs allege that Hamd intends to continue his scheme and sell these commercial properties at inflated prices through similar fraudulent means. (*Id.* at ¶ 94.) These allegations show that Hamd is attempting to engage in a monetary transaction in criminally derived property in violation of § 1957.

Plaintiffs have sufficiently pled that Hamd engaged in at least two instances of predicate acts constituting racketeering activity. The fourth element of a § 1962(c) claim has thus been met.

### 2.   Pattern

Next, Brookwood argues that Plaintiffs fail to meet the third element of a § 1962(c) claim: "a pattern" of racketeering activity. (Brookwood Response in Opp., Doc. 25, Pg. ID 272-73.)

"A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other." *Heinrich,* 668 F.3d at 409-10 (citing 18 U.S.C. § 1961(5)). "In order to show a 'pattern' of racketeering activity, a plaintiff must show 'that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" *Id.* (citing *H. J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 237-39 (1989)). "This requirement has come to be called the 'relationship plus continuity' test." *Id.*

Plaintiffs have satisfied the relationship prong of the "relationship plus continuity" test. To satisfy the relationship prong, a plaintiff must show that "[t]he predicate acts were committed by the same participants . . . for similar purposes with similar victims using similar methods of commission." *Heinrich*, 668 F.3d at 409. Plaintiffs have done just that. With the first predicate act, Hamd engaged in wire fraud by, among other things, creating fake leases on the Property to inflate its value at auction. (Proposed Am. Compl., Doc. 21-1, ¶¶ 14-46.) Hamd used proceeds from the Property's sale to buy other commercial properties to continue his scheme — which allowed Hamd to carry out his second predicate act of attempting to engage in monetary transactions in property derived from unlawful activity. (*Id.* at ¶¶ 93, 94.) The two predicate acts are thus related and the relationship prong has been met.

The Court turns to the continuity prong. "The continuity prong of the test can be satisfied by showing either a 'close-ended' pattern (a series of related predicate acts extending over a substantial period of time) or an 'open-ended' pattern (a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed)." *Heinrich*, 668 F.3d at 409-10 (citation omitted). Plaintiffs allege that they can establish open-ended continuity. (Plaintiffs' Reply in Support, Doc. 28, Pg. ID 314-15.) The Court agrees.

To show open-ended continuity, "the plaintiffs must plausibly allege that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Heinrich*, 668 F.3d at 410. "Determining whether the predicate acts establish open-ended continuity requires a court to examine the specific facts of the case."

22

*Id.* (citation omitted). For example, open-ended continuity may be present "if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *H.J. Inc.*, 492 U.S. at 242. "Even when 'the number of related predicates involved may be small and they may occur close together in time,' if 'the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future,' this 'suppl[ies] the requisite threat of continuity.'" *Brown*, 546 F.3d at 354 (quoting *H.J. Inc.*, 492 U.S. at 242). "In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J. Inc.*, 492 U.S. at 242.

Plaintiffs allege open-ended continuity by showing a threat of continued racketeering activity. Plaintiffs allege that Brookwood, through Hamd, purchased more commercial properties following the sale of the Property. (Proposed Am. Compl., Doc. 21-1, ¶ 93.) Brookwood, through Hamd, intends to inflate the prices of those commercial properties through a fraudulent scheme much like the one used with the Property. (*Id.* at ¶ 94.) The proceeds from the sale of those commercial properties could then be used to buy even more commercial properties. The scheme could then, in essence, continue indefinitely. Plaintiffs have adequately alleged a threat of continuing racketeering activity and, in turn, have shown open-ended continuity. *See United States v. Busacca*, 936 F.2d 232, 237-38 (6th Cir. 1991) (predicate acts committed in a span of two-and-a-half months were sufficient to establish open-ended continuity that the racketeering activity was capable of future repetition). The "relationship plus continuity" test has thus been met.

Brookwood nevertheless argues that Plaintiffs have failed to show a pattern of racketeering. (Brookwood Response in Opp., Doc. 25, Pg. ID 272.) In making this argument, Brookwood does not address the "relationship plus continuity" test. (*See id.*) Rather, Brookwood simply maintains that Plaintiffs cannot use the instances of fraud in the Tennessee and North Carolina lawsuits to show a pattern. (*Id.*) But, Plaintiffs do not allege that the conduct in those lawsuits constitutes the predicate acts of racketeering activity. (*See* Proposed Am. Compl., Doc. 21-1, ¶¶ 84-98.) So, those lawsuits have no impact on whether a pattern of racketeering activity exists. Thus, Brookwood's argument fails.

Plaintiffs have therefore sufficiently pled a pattern of racketeering activity to satisfy the third element of a § 1962(c) claim.

### 3. Enterprise

Finally, Brookwood argues that Plaintiffs fail to plead the second element of a § 1962(c) claim, that an enterprise engaged in the misconduct. (Brookwood Response in Opp., Doc. 25, Pg. ID 273-75.)

Section 1962(c) makes it unlawful for "any person . . . associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A "person" can be either an individual or a corporation. 18 U.S.C. § 1961(3). An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Note that "[t]he enterprise itself is not liable for RICO violations; rather, the

'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable." *W. Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Leas, Litig.)*, 727 F.3d 473, 490 (6th Cir. 2013) (citation omitted). So, "[t]o establish liability under § 1962(c), a plaintiff must allege and prove the existence of two distinct entities: (1) a person; and (2) an enterprise that is not simply the same person referred to by a different name." *Id.* (citation omitted).

Plaintiffs have properly pled a RICO enterprise. Plaintiffs allege that Hamd—the person—conducted the business of Brookwood—the enterprise—through a pattern of racketeering activity. (Proposed Am. Compl., Doc. 21-1, ¶¶ 84-98.) Defendant maintains that an enterprise must be pled as an association-in-fact, not as a corporation. (Brookwood Response in Opp., Doc. 25, Pg. ID 274.) But, an association-in-fact and a corporation are two separate types of entities that both constitute an enterprise. *See* 18 U.S.C. § 1961(4). Plaintiffs have sufficiently alleged that Brookwood is the enterprise for Hamd's racketeering activity. Thus, the second element of a § 1962(c) claim has been met.

Plaintiffs have therefore sufficiently alleged the elements of a § 1962(c) claim. Brookwood fails to show futility of Plaintiffs' proposed amendments through this argument.

### ii. Damages

Brookwood next argues that the pleading does not show that the alleged racketeering activity caused Plaintiffs any damages. (Brookwood Response in Opp., Doc. 25, Pg. ID 273.)

Plaintiffs in a civil RICO action under § 1962(c) must allege and prove that they

25

were "injured in [their] business or property by reason of a violation of [§ 1962]." 18 U.S.C. § 1964(c). "To allege a valid RICO claim [], a plaintiff must show not only that the predicate act was a 'but for' cause of plaintiff's injuries, but also that it was a proximate cause." *Heinrich*, 668 F.3d at 405 (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). "A plaintiff must show some direct relation between the injury asserted and the injurious conduct alleged." *Id.* The RICO damages provision is to be "liberally construed to effectuate [the statute's] remedial purposes." *Sedima*, 473 U.S. at 498 (quotation omitted).

Plaintiffs sufficiently pled that the alleged RICO violation caused them injury. Because of the alleged racketeering activity, Plaintiffs were induced to bid, and later close, on the Property. (Proposed Am. Compl., Doc. 21-1, ¶¶ 18, 23-25, 30-39.) Now, Plaintiffs are left with the commercial property that they overpaid for and that has unresolved property issues. (*See id.*) These deficiencies have caused Plaintiffs serious financial harm. (*Id.* at ¶ 97.) Though Plaintiffs do not specify the amount of damages that they have experienced, Brookwood does not provide any caselaw suggesting that Plaintiffs are required to do so. (*See* Brookwood Response in Opp., Doc. 25.) Plaintiffs have therefore sufficiently alleged that Hamd's RICO violation caused them damages.

Brookwood fails to show that Plaintiffs' § 1962(c) claim fails under Rule 12(b)(6). As Plaintiffs have sufficiently pled a § 1962(c) claim, the Court need not consider Brookwood's request for sanctions against Plaintiffs for this claim. (*See* Brookwood Response in Opp., Doc. 25, Pg. ID 269.)

26

### c. 18 U.S.C. § 1962(d) RICO Conspiracy Claim Against Hamd, Woeltje, and Chernitsky-Hamd

Finally, Plaintiffs present an 18 U.S.C. § 1962(d) claim against Hamd, Woeltje, and Chernitsky-Hamd in their Proposed Amended Complaint. (Proposed Am. Compl., Doc. 21-1, ¶¶ 99-106.) Brookwood maintains that this claim fails because Plaintiffs did not plead that Proposed Defendants agreed to join a RICO conspiracy. (Brookwood Response in Opp., Doc. 25, Pg. ID 275-76.) Brookwood also maintains that there is no RICO conspiracy because this matter is a mere "garden variety commercial real estate transaction." (*Id.*)

### i. Failure to Plead

Brookwood first argues that Plaintiffs fail to plead that Proposed Defendants intended to engage in a conspiracy in violation of § 1962(d). (Brookwood Response in Opp., Doc. 25, Pg. ID 275-76.)

Section 1962(d) makes it unlawful for any person to conspire to commit a RICO violation. "To state a claim for violation of § 1962(d), a plaintiff must successfully allege all the elements of a RICO violation, as well as alleging the existence of an illicit agreement that included the conspiracy defendant to violate the substantive RICO provision." *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Georgia*, 768 F. App'x 446, 459 (6th Cir. 2019) (quotation omitted). "In other words, the plaintiff must sufficiently allege the four elements as to someone (to support the direct violation), and then claim that the defendant against whom the plaintiff is asserting a § 1962(d) claim joined a conspiracy with those direct violators." *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*,

462 F. Supp. 3d 839, 858 (S.D. Ohio 2020).

"An agreement [to conspire] can be shown if the defendant objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes." *Heinrich*, 668 F.3d at 411 (quotation omitted). "It is enough if the person joins the conspiracy and undertakes an overt act, legal or illegal, in furtherance of it." *Compound Prop.*, 462 F. Supp. 3d at 864 (citing *Salinas v. United States*, 522 U.S. 52, 64 (1997) ("If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.")). The agreement to conspire may be established through "[c]ircumstantial evidence which a reasonable person could interpret as showing participation in a common plan." *United States v. Crossley*, 224 F.3d 847, 856 (6th Cir. 2000).

Plaintiffs have sufficiently pled the existence of a RICO conspiracy among Hamd, Woeltje, and Chernitsky-Hamd. As detailed above, Plaintiffs pled a direct RICO violation against Hamd. Plaintiffs also sufficiently pled that Woeltje and Chernitsky-Hamd agreed to conspired with Hamd in engaging in that racketeering activity. This agreement can be inferred from Woeltje and Chernitsky-Hamd's "involvement in the predicate acts" to inflate the price of the Property. *Heinrich*, 668 F.3d at 411. Woeltje specifically directed the Property's tenant scheme and spread misinformation about the Property to potential buyers. (Proposed Am. Compl., Doc. 21-1, ¶¶ 15-17, 21.) Chernitsky-Hamd's involvement relates to her role in the tenant scheme, as she was the individual who informed the tenants that their rents would never be collected. (*Id.* at ¶ 20.) These acts by Woeltje and Chernitsky-Hamd demonstrate an agreement to engage in a RICO conspiracy with

Hamd. Plaintiffs have therefore adequately alleged a RICO conspiracy in violation of §
1962(d) and Brookwood's futility argument fails.

### ii. Business Dispute as Conspiracy

Finally, Brookwood maintains that Plaintiffs' § 1962(d) claim must fail because
allowing such a claim to proceed would be an overbroad application of RICO.
(Brookwood Response in Opp., Doc. 25, Pg. ID 275-76.)

The Supreme Court has observed that "RICO is to be read broadly." *Sedima*, 473
U.S. at 498-99 (quotation omitted). This view arises "not only from Congress' self-
consciously expansive language and overall approach, but also . . . its express admonition
that RICO is to be liberally construed to effectuate its remedial purposes." *Id.* "The
statute's remedial purposes are nowhere more evident than in the provision of a private
action for those injured by racketeering activity." *Id.*

Still, some circuits have concluded that RICO "was never intended to allow
plaintiffs to turn garden-variety state law fraud claims into federal RICO actions."
*Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) (citation omitted); *see
also Ponte v. Chase Bank USA, N.A.*, No. 12-13901, 2013 U.S. Dist. LEXIS 154582, at *10 (E.D.
Mich. Oct. 29, 2013) (collecting cases from Third, Seventh, and Eighth Circuits for this
proposition). But, as this Court has previously noted, "the Sixth Circuit's decisions . . . do
not readily admit to [such] limiting principles, nor for that matter does the Supreme
Court." *Compound Prop.*, 462 F. Supp. 3d at 863. "This Court is bound to apply those
decisions." *Id.* Brookwood's argument, then, is not well taken.

Thus, Brookwood fails to show that Plaintiffs' § 1962(d) claim would be dismissed

under Rule 12(b)(6).

*    *    *

Brookwood has not shown that Plaintiffs' Proposed Amended Complaint would be dismissed under the Rule 12(b)(6) standard. In turn, Brookwood fails to show the futility of Plaintiffs' proposed amendments and Plaintiffs' Motion to Amend (Doc. 21) must be granted.

## II.    Brookwood's Motion to Strike

The Court turns its attention to Brookwood's Motion to Strike (Doc. 23), which requests that this Court strike certain allegations in Plaintiffs' original Complaint (Doc. 1). "Any motion pertaining to the original complaint would be subject to dismissal as moot once an amended complaint is filed." *Wagner v. Mastiffs*, No. 2:08-cv-431, 2009 U.S. Dist. LEXIS 74820, at *8 (S.D. Ohio Aug. 17, 2009) (citation omitted). Plaintiff will soon file an Amended Complaint to the docket. The motion to strike, then, addresses a pleading that will no longer be operative and it must be denied as moot.

## III.    Brookwood's Motion for Partial Judgment on the Pleadings

Finally, the Court considers Brookwood's Motion for Partial Judgment on the Pleadings (Doc. 24). This motion similarly concerns Plaintiffs' original Complaint (Doc. 1). (*See id.*) So, like the motion to strike, this motion must also be denied as moot. *See Cooper v. Montgomery County*, No. 3:13-cv-272, 2015 U.S. Dist. LEXIS 115778, at *1 (S.D. Ohio Aug. 28, 2015) (finding a motion for judgment on the pleadings moot "[g]iven that Plaintiff has filed a Second Amended Complaint").

30

## CONCLUSION

Based on the foregoing, the Court **ORDERS** the following:

1.  Plaintiffs' Motion to Amend (Doc. 21) is **GRANTED**;

2.  Plaintiffs **SHALL FILE** their Amended Complaint within seven (7) days
    of this Order. The Amended Complaint must contain all of Plaintiffs'
    allegations and claims in one document. The Amended Complaint
    should not incorporate by reference the contents of previous pleadings;

3.  Brookwood's Motion to Strike Jury Demand (Doc. 23) is **DENIED AS
    MOOT**; and

4.  Brookwood's Motion for a Partial Judgment on the Pleadings (Doc. 24)
    is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND

31