IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | |
|---|---|
| FLAMENGOS INVESTMENTS, LLC, et al., | : Case No. 1:22-cv-489 |
| | : |
| | : Judge Matthew W. McFarland |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| BROOKWOOD CAPITAL PARTNERS LLC *d/b/a* BROOKWOOD CAPITAL ADVISORS, et al. | : |
| | : |
| | : |
| Defendants. | : |

### ORDER AND OPINION

This matter is before the Court on Defendants Ben Hamd, Wyatt Woeltje, and Lydia Chernitsky-Hamd's ("Individual Defendants'") Motion to Dismiss Plaintiffs' Fourth and Fifth Claims for Relief (Doc. 47). Plaintiffs filed a Response in Opposition (Doc. 51), to which the Individual Defendants replied (Doc. 52). Thus, this matter is ripe for the Court's review. For the reasons below, the Individual Defendants' Motion to Dismiss (Doc. 47) is **DENIED**.

### BACKGROUND

Defendant Brookwood Capital Partners, LLC, doing business as Brookwood Capital Advisors ("Brookwood"), is a Tennessee business that buys and sells shopping centers. (Am. Compl., Doc. 39, ¶¶ 3, 10.) In February 2022, Brookwood bought the Fort Steuben Mall ("Property"). (*Id.* at ¶ 11.) Soon after, Brookwood placed the Property for

sale on an online auction site. (*Id.* at ¶ 12.)

Ben Hamd and Wyatt Woeltje led Brookwood's efforts to sell the Property. (Am. Compl., Doc. 39, ¶ 16.) Brookwood provided potential buyers with a "Rent Roll" of the Property. (*Id.* at ¶ 14.) The Rent Roll stated that the Property had dozens of paying tenants that produced over $140,000 per month for the Property. (*Id.*) The Rent Roll, however, was misleading. To induce tenants to lease on the Property, Lydia Chernitsky-Hamd told potential tenants that the leases would never be enforced. (*Id.* at ¶ 20.) Once those individuals became tenants of the Property, Brookwood never collected on rent. (*Id.* at ¶ 21.) Nevertheless, these leases were included on the Rent Roll as a part of the Property's cash flow. (*Id.*) In turn, the Rent Roll highly inflated the income produced by the Property. (*Id.*)

Plaintiff Flamengos Investments, LLC, ("Flamengos"), an Ohio company, was a potential buyer of the Property. (Am. Compl., Doc. 39, ¶¶ 1, 14.) In addition to the Rent Roll, Brookwood made other representations to Flamengos regarding the Property's condition, leases, rents, and projections of income. (*Id.*) Relying on this information, Flamengos submitted a bid at auction for the Property. (*Id.* at ¶ 24.) Flamengos' bid won, and, on May 5, 2022, Flamengos and Brookwood entered a Contract for Purchase and Sale of the Property ("Purchase Agreement") for the sum of $11,602,500. (*Id.* at ¶¶ 24-25; Purchase Agreement, Doc. 39-1, Pg. ID 478.)

On May 17, 2022, Flamengos inspected the Property. (Am. Compl., Doc. 39, ¶ 26.) During the visit, Flamengos discovered substantial problems with the Property's roof and parking lot. (*Id.*) Brookwood assured Flamengos that it was repairing those property

2

issues. (*Id.* at ¶ 30.) Brookwood's Managing Director emailed Flamengos, stating: "in order to facilitate a fast close[,] how about we escrow $100,000 of the closing . . . , which will go towards additional capital improvements. This will be in addition to the roof repairs and the asphalt capital improvements that have already been scheduled." (*Id.* at ¶ 32.) As it turned out, however, Brookwood had not scheduled any repairs for the property issues. (*Id.* at ¶ 33.)

Flamengos and Brookwood agreed that repairs on the property issues would be a condition of closing. (Am. Compl., Doc. 39, ¶ 36.) The parties reduced this agreement to writing as an amendment to the Purchase Agreement. (*Id.* at ¶¶ 37-38.) Under this amendment, Flamingos assigned all its rights, responsibilities, and obligations under the Purchase Agreement to Plaintiff Fort Steuben Mall Holdings, LLC ("FSMH"), of which Flamengos is the sole member. (*Id.* at ¶¶ 2, 38.) The amendment then required Brookwood to complete repairs on "the Property Issues within sixty (60) days following Closing to the satisfaction of [FSMH]." (*Id.* at ¶ 38.)

On June 3, 2022, the parties closed on the Property. (Am. Compl., Doc. 39, ¶ 40.) Brookwood failed to complete repairs on the property issues within 60 days of closing. (*Id.* at ¶ 41.) Brookwood now refuses to pay beyond $100,000 for the Property's roof repairs, citing to a contractor quote that found that repairs would cost only $97,750. (*Id.* at ¶¶ 42, 44.) Though, previously, Brookwood had received another quote stating that the roof would require over $1.8 million to properly repair. (*Id.* at ¶ 34.) Brookwood's failure to repair the property issues has created additional damages to the Property. (*Id.* at ¶ 45.)

Plaintiffs filed their initial complaint on August 22, 2022, bringing claims of fraud,

3

negligent misrepresentation, breach of contract, conversion, unjust enrichment, and constructive trust against Brookwood. (Compl., Doc. 1.) Plaintiffs later moved for leave to file an amended complaint, adding Hamd, Wyatt, and Chernitsky-Hamd as defendants for certain claims and alleging additional claims for violations of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) ("RICO claims"). (Plaintiffs' Motion for Leave, Doc. 21.) Defendant Brookwood opposed this motion, arguing that, among other things, Plaintiffs' RICO claims were futile because they would not survive a Rule 12(b)(6) motion to dismiss. (Brookwood's Response to Motion for Leave, Doc. 25.) On January 25, 2024, the Court ruled that Plaintiffs had sufficiently pled the RICO claims and allowed Plaintiffs to file their Amended Complaint. (Order Granting Plaintiffs' Motion for Leave, Doc. 35.) The Individual Defendants now move to dismiss Plaintiffs' RICO claims for failure to state a claim. (Motion to Dismiss, Doc. 47.)

## LAW & ANALYSIS

The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the plaintiff's cause of action as stated in the complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Courts accept all allegations of material fact as true and must construe such allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at

4

554-55; *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555.

### I. Law of the Case

As an initial matter, the Individual Defendants' Motion to Dismiss may be precluded by the law of the case doctrine. Under this doctrine, "findings made at one stage in the litigation should not be considered at subsequent stages of that same litigation." *Dixie Fuel Co., LLC v. Dir., OWCP*, 820 F.3d 833, 843 (6th Cir. 2016). Although "[l]aw of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618 (1983). The Court has already ordered that Plaintiffs' RICO claims were not futile and would not be dismissed under the Rule 12(b)(6) standard. (*See* Order Granting Plaintiffs' Motion for Leave, Doc. 35, Pg. ID 383.) The Individual Defendants now move to dismiss these same claims under the same standard. (Motion to Dismiss, Doc. 47, Pg. ID 551.) While some courts have applied the law of the case doctrine in similar postures, the Court will analyze the Individual Defendant's Motion on the merits. *Heritage Guitar, Inc. v. Gibson Brands, Inc.*, 1:20-CV-229, 2022 U.S. Dist. LEXIS 100723 at *5-6 (W.D. Mich. June 6, 2022) (citing *Teoba v. TruGreen Landcare LLC*, No. 10-CV-6132, 2013 U.S. Dist. LEXIS 52831 at *12-13 (W.D.N.Y. Apr. 10, 2013)). Regardless, the Court's conclusion is the same.

### II. Predicate Acts

Title 18 U.S.C. § 1962(c) prohibits any person from conducting an "enterprise's affairs through a pattern of racketeering activity." To successfully plead a violation of 18 U.S.C. § 1962(c), the plaintiff must allege (1) conduct (2) of an enterprise (3) through a

5

pattern (4) of racketeering activity. *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 404 (6th Cir. 2012). The Individual Defendants argue that Plaintiffs fail to allege sufficient facts to support the third and fourth elements of a RICO claim. (Motion to Dismiss, Doc. 47, Pg. ID 551.) The Court will first discuss the alleged predicate acts and then the alleged pattern.

Section 1961(1) sets forth an extensive list of predicate offenses that constitute "racketeering activity." 18 U.S.C. § 1961(1). In the current matter, Plaintiffs claim Hamd engaged in predicate acts of wire fraud, violating 18 U.S.C. § 1343, and "monetary transactions in property derived from specified unlawful activity" (also known as "money laundering"), violating 18 U.S.C. § 1957. (Am. Compl., Doc. 39, ¶ 93.) Defendants argue that Plaintiffs have not sufficiently alleged money laundering as the second predicate act. (Motion to Dismiss, Doc. 47, Pg. ID 551.)

Section 1957(a) describes money laundering conduct as "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a). "'Monetary transaction' means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution." 18 U.S.C. § 1957(f)(1). "'[C]riminally derived property' means any property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. § 1957(f)(2). "Specified unlawful activity" is defined as any criminal offense listed under § 1956, which includes wire fraud. *See United States v. Coffman*, 612 F. App'x 278, 282 (6th Cir. 2015); *see also* 18 U.S.C. §§ 1957(f)(3), 1956(c)(7),

6

1961(1).

The Court has already ruled that Plaintiffs have sufficiently pled that Defendant Hamd engaged in money laundering in violation of § 1957. (*See* Order Granting Plaintiffs' Motion for Leave, Doc. 35, Pg. ID 374.) The Individual Defendants now argue that because Plaintiffs' allegations rely on Plaintiffs' "information and belief," those allegations fall short of the Rule 9(b) standard. (Motion to Dismiss, Doc. 47, Pg. ID 552.) Defendants rightfully note that fraud allegations invoke the heightened pleading standard set forth under Federal Rule of Civil Procedure 9(b). *Roden v. Schlichter*, No. 20-3466, 2021 U.S. App. LEXIS 4562 at *5 (6th Cir. Feb. 17, 2021). This requires "a party [to] state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, a plaintiff must at least "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 643 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). Furthermore, fraud allegations generally "cannot be based upon 'information and belief,' except where the relevant facts lie exclusively within knowledge and control of the opposing party, and even then, the plaintiff must plead a particular statement of facts upon which his belief is based." *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990).

Plaintiffs state that in addition to committing wire fraud, "Defendants then knowingly engaged in, and caused to occur, money laundering in violation of 18 U.S.C. § 1957." (Am. Compl., Doc. 37, ¶ 93.) In support, Plaintiffs allege that "upon information

7

and belief, the [Individual] Defendants used at least part of the proceeds from the sale of the Property to purchase Maplewood Mall in St. Paul, Minnesota, among other commercial properties." (*Id.*) The Court does not see reason to deviate from its prior ruling. Plaintiffs have sufficiently pled that the Individual Defendants attempted to engage in money laundering in violation of 18 U.S.C. § 1957.

As detailed in the Court's prior opinion and not contested by the Individual Defendants, Plaintiffs sufficiently pled that Hamd engaged in wire fraud, the first predicate act, when he sold the Property. (Order Granting Plaintiffs' Motion for Leave, Doc. 35, Pg. ID 373.) Upon Plaintiffs' information and belief, Defendant Hamd used the proceeds of this transaction to buy more commercial properties, including the Maplewood Mall. (Am. Compl. Doc. 37, ¶ 93.) Therefore, these commercial properties may constitute "criminally derived property," and their purchase constitutes the second predicate act of money laundering 18 U.S.C. § 1957(f)(2). Plaintiffs also claim that this process continues to be a regular part of the Defendants' business practices. (Am. Compl., Doc. 37, ¶ 94.) "Rule 9(b) does not require omniscience; rather, the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1998). Here, Plaintiffs' Amended Complaint alleges sufficient detail to put Defendant Hamd on notice of the claim.

Defendants also argue for dismissal by stating that the current matter is similar to *Roden v. Schlichter*, 2021 U.S. App. LEXIS 4562 at *7. In *Roden*, the plaintiffs alleged that the defendants violated RICO by conspiring to sell items stolen from a home auction. *Id.*

8

at *2. The Sixth Circuit affirmed dismissal of the complaint because the plaintiffs failed to allege that the property was derived from a specified unlawful activity and failed to properly allege the substantive RICO violation. *Id.* at *8. The current matter is readily distinguishable. Here, Plaintiffs allege that Hamd used wire fraud proceeds to purchase commercial properties, a specified unlawful activity. (Am. Compl., Doc. 37, ¶ 93.) Plaintiffs also sufficiently allege the substantive RICO violation, as explained above. Thus, Plaintiffs have sufficiently pled a second predicate act of money laundering.

### III. Demonstration of a Pattern

Defendants next argue that Plaintiffs fail to claim "a pattern" of racketeering activity, the third element of a § 1962(c) claim. (Motion to Dismiss, Doc. 47, Pg. ID 554.) "A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other." *Heinrich*, 668 F.3d at 409-10 (citing 18 U.S.C. § 1961(5)). "In order to show a 'pattern' of racketeering activity, a plaintiff must show 'that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" *Id.* (citing *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989)). "This requirement has come to be called the 'relationship plus continuity' test." *Id.*

The Court has already determined that Plaintiffs have satisfied the relationship prong of the "relationship plus continuity test." (*See* Order Granting Plaintiffs' Motion for Leave, Doc. 35, Pg. ID 375). Defendants also do not appear to contest the Court's analysis on this issue. (Motion to Dismiss, Doc. 47, Pg. ID 554.) Thus, the Court will turn to the second prong, "continuity." "The continuity prong of the test can be satisfied by showing either a 'close-ended' pattern (a series of related predicate acts extending over a

substantial period of time) or an 'open-ended' pattern (a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed)." *Heinrich*, 668 F.3d at 409-10 (citation omitted).

To show open-ended continuity, "the plaintiffs must plausibly allege that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Heinrich*, 668 F.3d at 410. "Determining whether the predicate acts establish open-ended continuity requires a court to examine the specific facts of the case." *Id.* (citation omitted). For example, open-ended continuity may be present "if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989). "Even when 'the number of related predicates involved may be small and they may occur close together in time,' if 'the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future,' this 'suppl[ies] the requisite threat of continuity.'" *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir. 2008) (quoting *H.J. Inc.*, 492 U.S. at 242). "In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J. Inc.*, 492 U.S. at 242.

Plaintiffs have sufficiently pled open-ended continuity by showing a threat of continued racketeering activity. Plaintiffs allege that the Individual Defendants engaged in wire fraud when selling the Property to Plaintiffs. (Am. Compl., Doc. 37, ¶ 93.) Using the proceeds from the sale of the Property, Hamd purchased the Maplewood Mall in St. Paul, Minnesota, and other commercial properties. (*Id.*) Plaintiff further alleges that this

10

scheme "continu[es] as a regular part of the [Individual] Defendants' business practices." (*Id.*) Thus, Hamd could inflate the prices of the Maplewood Mall and other commercial properties through a fraudulent scheme, similar to the one used with the Property. (*Id.* at ¶¶ 93-94.) The proceeds from the sale of the commercial properties could then be used to purchase additional properties, allowing the scheme to continue indefinitely. Plaintiffs have therefore adequately pled a threat of continuing racketeering activity through open-ended continuity. *See United States v. Busacca*, 936 F.2d 232, 237-38 (6th Cir. 1991) (finding that predicate acts committed in a span of two-and-a-half months were sufficient to establish open-ended continuity since the racketeering activity was capable of future repetition).

Moreover, Plaintiffs have sufficiently pled that the alleged scheme is part of Defendants' "regular way of doing business." *H.J. Inc.*, 492 U.S. at 242. Considering a similar case helps to illustrate this point. In *Arnold v. Petland, Inc.*, the plaintiffs entered a franchise agreement with the defendants to run a pet store. No. 2:07-CV-1307, 2009 U.S. Dist. LEXIS 31377 at *3-4 (S.D. Ohio Mar. 26, 2009). The plaintiffs claimed that the defendants made several misrepresentations about the store, including overstating the financial performance of the prior franchisee, the current inventory of the store, and the condition of the air conditioning and ventilation. *Id.* at *6-7. In the plaintiffs' RICO claim, they alleged that the defendants had used a similar scheme to victimize other franchisees. *Id.* at *28. The Court took judicial notice of other lawsuits brought by franchisees alleging similar factual allegations against the same defendants. *Id.* at *28-29. The Court ruled that the plaintiffs had satisfied the continuity requirement because "the existence of the other

11

cases bolster[ed] the plausibility of plaintiffs' allegations pertaining to relatedness and continuity." *Id.* at *29.

The current matter mirrors *Arnold*. Plaintiffs point to two other lawsuits filed against Defendants. (Am. Compl., Doc. 37, ¶ 89; *See* Tennessee Voluntary Dismissal, Doc. 52-1, Pg. ID 614; *See also* North Carolina Voluntary Dismissal, Doc. 52-2, Pg. ID 617.) Both lawsuits—one filed in Tennessee state court and the other in the U.S. District Court for the Eastern District of North Carolina—allege that Defendants purchased a commercial property and created fictitious leases to inflate the properties' values. (Am. Compl., Doc. 37, ¶ 89.) Although Defendants argue that Plaintiffs have only pled a single act, the existence of these other cases strongly support Plaintiffs' claim that this scheme is part of Defendants' "regular way of doing business." *H.J. Inc.*, 492 U.S. at 242; *Arnold*, 2009 U.S. Dist. LEXIS 31377 at *29.

The Individual Defendants argue for dismissal by comparing the current matter to *Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006). In *Moon*, the plaintiff alleged that his employer formed an enterprise with a doctor, another company, and a compensation fund to wrongfully terminate his worker's compensation benefits. *Id.* at 722. The plaintiff also petitioned the Michigan Workers' Disability Compensation Bureau to reinstate his benefits. *Id.* The Sixth Circuit found that there was no open-ended continuity because "there is no risk of ongoing racketeering activity where [the plaintiff] had petitioned the Bureau for a resolution of his dispute." *Id.* at 727. A final decision by the Bureau would be binding on the parties and "if favorable to [the plaintiff], would prevent the [d]efendants from withdrawing benefits in the absence of further action by

12

the Bureau." *Id*. This created an end point to the defendants' alleged scheme. *Id*. Additionally, the plaintiff had not pled any allegations that the fraudulent termination of worker's compensation benefits was the defendants' "regular way of doing business." *Id*.

The Court finds *Moon* distinguishable from the current matter. Here, Defendants have not suggested that an alternate mechanism may mitigate the risk of ongoing racketeering activity like the Bureau in *Moon*. Furthermore, as stated above, Plaintiffs have pled sufficient, articulable facts alleging that both Defendants' scheme could continue indefinitely and that the scheme is Defendants' regular way of doing business. Plaintiffs have sufficiently pled a pattern of racketeering activity satisfying the third element of 18 U.S.C. 1962(c). Thus, Plaintiffs' RICO claims may proceed.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion to Dismiss (Doc. 47).

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND

13